J-S42027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
   :   PENNSYLVANIA
   :
   v.   :
   :
   :
DAVID JOHNSON   :
   :
   Appellant   :   No. 699 WDA 2022

Appeal from the PCRA Order Entered May 4, 2022
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0000864-2015

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:        **FILED: JANUARY 10, 2023**

Appellant, David Johnson, appeals from the May 4, 2022 order entered in the Court of Common Plea of Cambria County, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The PCRA court summarized the factual and procedural history as follows:

> On March 31, 2015, Richland Township [Police] Detective Keirn was summoned by the watch commander to the township building early in the morning. It was reported that an individual, later identified as [Appellant], came to the [police] station and indicated that he [] killed his girlfriend inside their Richland Township[, Pennsylvania] residence. Detective Keirn interviewed [Appellant,] and [Appellant] indicated that he [] smoked crack cocaine the previous afternoon on March 30, 2015. When [Appellant's] girlfriend[] returned home after an evening out with friends, [Appellant] demanded she give him her [automated teller

---

[*] Retired Senior Judge assigned to the Superior Court.

machine ("ATM") personal identification number ("PIN")] so [] he could retrieve money to buy more crack cocaine. [Appellant] alleged that he did not want to stab [his girlfriend], he only wished to scare her into providing him with the [ATM] PIN[. Appellant] claimed that he had been thinking of doing this and [] brought duct tape and a knife to be prepared for when [his girlfriend] arrived home. A struggle[] ensued when [Appellant] tried to secure [his girlfriend] with duct tape so that she would not alert authorities while he retrieved the money from the ATM. During the struggle, [Appellant] admitted to stabbing [his girlfriend] twice in the side of [the] back of her neck. [Appellant] then proceeded to [withdraw] money [from his girlfriend's bank] account and purchased more crack cocaine. [Appellant] returned home, used the crack cocaine, drank wine, and took a shower according to his statement to Detective Keirn.

[Appellant] was found guilty[, following a bench trial, of the following criminal charges: criminal homicide – first degree murder (count 1), aggravated assault (count 2), robbery – inflicts serious bodily injury (count 3), robbery – threat of immediate serious bodily injury (count 4), theft by unlawful taking or disposition – moveable property (count 5), access device fraud (4 counts charged as first-degree misdemeanors, 5 counts charged as second-degree misdemeanors) (counts 6 – 14), aggravated assault with a deadly weapon (2 counts) (counts 16 and 17), simple assault by physical menace (count 21), and abuse of a corpse (count 22).[1]] The bench trial took place from March 9, 2017[,] to March 15, 2017. [After being found guilty of the aforementioned crimes, Appellant] was sentenced on March 16, 2017[,] to life imprisonment without the possibility of parole [for his first-degree murder conviction], plus a consecutive aggregate term of incarceration of twenty [] years [and] four [] months to forty [] years [and] eight [] months [for the remaining

---

[1] 18 Pa.C.S.A. §§ 2501(a), 2702(a)(1), 3701(a)(1)(i), 3701(a)(1)(ii), 3921(a), 4106(a)(1)(ii), 2702(a)(4), 2701(a)(3), and 5510, respectively. Appellant was found not guilty of criminal attempt to commit kidnapping, aggravated assault by a deadly weapon (1 count), criminal attempt to commit unlawful restraint, and criminal attempt to commit false imprisonment. 18 Pa.C.S.A. §§ 901(a) (kidnapping), 2702(a)(4), 901(a) (unlawful restraint), and 901(a) (false imprisonment), respectively.

convictions.[2]] . . . On March 27, 2017, [Appellant] filed post-sentence motions that were denied by [the trial court on] May 4, 2017. [Appellant] filed [a] notice of appeal [] on May 30, 2017. [This Court] affirmed the judgment of [sentence on July 12, 2018, and our Supreme Court] denied [Appellant's] request for allowance to appeal on February 24, 2020. [**See Commonwealth v. Johnson**, 2018 WL 3385847 (Pa. Super. filed July 12, 2018) (unpublished memorandum), *appeal denied*, 224 A.3d 363 (Pa. 2020). Appellant] filed a petition for post-conviction collateral relief on February 26, 2021. Appointed counsel for [Appellant] filed an amended PCRA petition on June 25, 2021[, and] two supplemental [amended] PCRA [petitions] on September 10, 2021[,] and November 29, 2021[,] respectively. On November 30, 2021[,] a PCRA [evidentiary] hearing was held on this matter. The parties were ordered to file memoranda of law following the hearing. The Commonwealth filed [its] brief in opposition on March 24, 2022[,] and [Appellant] filed his brief in support of his PCRA petition[] on March 25, 2022.

PCRA Court Opinion, 5/4/22, at 2-4 (extraneous capitalization omitted). The

PCRA court denied Appellant's petition on May 4, 2022. This appeal followed.[3]

Appellant raises the following issue for our review:

---

[2] The trial court sentenced Appellant to 9 to 18 years' incarceration on count 3, with the sentence to run concurrently to count 1. Appellant was sentenced to 16 to 32 months' incarceration on count 5, with the sentence to run consecutively to counts 1 and 3. On counts 6 through 14, the trial court sentenced Appellant to 1 to 2 years' incarceration at each count with each sentence to run consecutively to the sentence imposed on the prior count. Appellant was also sentenced to 1 to 2 years' incarceration on count 22, with that sentence to run consecutively to count 14. The trial court imposed no further sentence on counts 2, 4, 16, 17, and 21. Appellant was also given credit for time served towards his sentence imposed on count 1.

[3] On June 23, 2022, Appellant filed his concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On July 8, 2022, the PCRA court filed its Rule 1925(a) opinion, relying on its May 4, 2022 opinion denying the PCRA petition.

Whether the PCRA court erred[ or ]abused its discretion by failing to find trial counsel ineffective for failing to take action to suppress [Appellant's] statement made to [the] police?

Appellant's Brief at 4.

In addressing Appellant's issue, we are mindful of our well-settled standard and scope of review of an order denying a PCRA petition. Proper appellate review of a PCRA court's denial of a petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Lawson**, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." **Commonwealth v. Hickman**, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. **Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

Appellant's issue raises a claim alleging that trial counsel provided ineffective assistance. Appellant's Brief at 8-15. "It is well-established that counsel is presumed effective[.]" **Commonwealth v. Koehler**, 36 A.3d 121, 132 (Pa. 2012), *citing* **Strickland v. Washington**, 466 U.S. 668, 687-691 (1984). To plead and prove a claim of ineffective assistance of counsel, "a petitioner must establish: (1) that the underlying issue has arguable merit;

(2) counsel's actions lacked an objective[ly] reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*), *appeal denied*, 93 A.3d 463 (Pa. 2014). "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010). "In determining whether counsel's action was reasonable, we do not question whether there were other more logical courses of action which counsel could have pursued[. R]ather, we must examine whether counsel's decision[] had any reasonable basis." *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007).

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his[, or her,] client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

*Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). A petitioner establishes prejudice when he or she demonstrates "that there is a reasonable probability that, but for counsel's [acts or omissions], the result of the proceeding would have been different." *Commonwealth v. Johnson*, 966 A.2d 523, 533 (Pa. 2009).

Appellant alleges that trial counsel was ineffective for failing to file a motion to suppress the statement Appellant provided to the police "mere

hours after the [incident], indicating his involvement in the death of the victim." Appellant's Brief at 11. Appellant contends that at the time he made the statement to the police, he "was under the influence of crack cocaine and most likely alcohol." *Id.* Appellant asserts that trial counsel was ineffective for failing "to seek to suppress his statement[] on the basis he could not [knowingly, voluntarily, and intelligently waive] his *Miranda* rights to counsel and to remain silent because of his level of intoxication[."[4]] *Id.* at 13 (case citation formatting corrected). Appellant argues,

> [trial counsel's] reasoning for not moving to [] suppress [the] statement is understandable[] but was not reasonable at [the pre-trial phase of] the proceedings. [Trial counsel] asserted [Appellant's] statement was needed because it contained elements of [the] preferred defense, the use of intoxicants for diminished capacity, and the fact that it showed remorse for the crime. However, [trial counsel] agreed that diminished capacity was only a partial defense - it would lower the degree of murder from first [degree] to third [degree], if accepted by the factfinder. Nonetheless, if [trial counsel] was successful in suppressing [the] statement, and any evidence that was obtained based upon that statement, [trial counsel] very well could have obtained a complete exoneration, or even a dismissal of the charges at a *habeas corpus* proceeding.

*Id.* at 14.

In denying Appellant's petition, the PCRA court stated,

Trial counsel['s] trial strategies and trial tactics cannot be viewed in hindsight. The [PCRA] court finds that [Appellant's] ineffective assistance of counsel claim fails the second prong of the test, that counsel had no reasonable strategic basis for action or inaction. The [PCRA] court further finds that trial counsel had a reasonable

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

strategic basis for [the] trial tactics. Trial counsel testified at the PCRA [evidentiary] hearing that [counsel] had an objectively reasonable basis for not filing a motion to suppress [Appellant's] confession[.]

[T]rial counsel discussed [the] strategic reasoning as to why [counsel] would not file a suppression motion[] and believed that [Appellant] understood these reasons during each of [the] discussions. [T]rial counsel testified that, at the preliminary hearing, trial counsel learned that when [Appellant] turned himself in to the Richland [Township] police, prior to making the statements [Appellant] wished to suppress, that [Appellant] appeared perfectly sober, did not have an odor of alcohol, and did not appear under the influence of any drugs or alcohol to the police officers. Trial counsel ultimately decided to formulate a diminished capacity defense based upon [Appellant's] statements made to [the] police in an attempt to reduce the [first-degree] murder [] charge to [third – degree] murder. Further, trial counsel believed that the statements as to [Appellant's] mind-frame and intent would be useful in the penalty-phase proceeding if that point was reached.

PCRA Court Opinion, 5/4/22, at 7-8 (extraneous capitalization omitted, paragraph sequence modified).

At the evidentiary hearing, trial counsel testified that she and co-counsel discussed the issue of Appellant's statements to the police and whether to pursue a motion to suppress those statements with Appellant. N.T., 11/30/21, at 9-10. Trial counsel was "fully convinced" that Appellant understood the reasons why she did not seek to suppress the statements and that Appellant "entirely agreed" with that decision. *Id.* at 10. In explaining the rationale for electing to forgo suppression of the statements, trial counsel explained,

First of all, the statements that [Appellant] gave were, when we looked at them, the phrase that I recall[, and that] we discussed [] with [Appellant,] was[ "]be careful what you ask for.[" T]he reason for that was[,] contained within both statements were

- 7 -

defenses in two trials. [W]hen I say two trials[, I mean,] we were facing both a guilt phase [trial] and a second phase, which would be the death penalty. So as far as the guilt phase, [] contained within [the statements] is a – both a description of his use of crack cocaine and intoxicants and also his description that he did not intend – he did not intend to kill the young lady. It was his intent to simply obtain her [PIN], which, you know, we maintained is a misdemeanor. So[,] there was no intent to kill her, no intent to commit murder, [only] intent to get her [PIN] to obtain money for his – to obtain crack cocaine. [T]here was, I believe, descriptions of use of alcohol[,] and I don't recall if there was a description of use of crack cocaine before that. But, you know, certainly use of alcohol, which was basically our defense, which was diminished capacity in order to try and reduce the [charge of m]urder in the first degree down to murder in the third degree.

Also, and certainly very important, possibly taking priority, was the fact that the statement, both statements, were defenses in the death penalty [phase] in several ways.

First of all, both [] statements showed remorse, showed sorrow, showed how sorry he was for what he had done, and [that] is a mitigating circumstance[. T]he fact that he had gone to the police and turned himself in was also a mitigating circumstance. And[,] again showed how sorry he was for what he had done. If we move[d] to suppress [the statements], we – to me if we couldn't use [the statements] at the guilt phase, we certainly wouldn't be able to use [the statements] at the death penalty phase, or if we tried to [use the statements at the death penalty phase, we would] certainly have an argument about it[] from the Commonwealth and also, you know, at that time[,] thinking we would be having a jury trial, [seeking to suppress the statements] would backfire in our faces if [a] jury hears, what do you mean, he confessed? I mean, that[,] I think[,] would be an insult to the jury and certainly backfire in our faces.

Also[,] the statement was going to be used by all three [defense] experts that we hired and [the experts] relied upon [the statements] in their reports and in their analysis and reports that they were hired to do. []

Mr. Vey was the pathologist[] that we hired[,] and he relied on that, the statement, and referred to it in his report. And Dr. Guzzardi was hired for the diminished capacity defense. He also relied on the statements in his report. If we move to suppress

[the statements], then we[,] they can't testify – they can't rely on the statements, they can't testify about it and their testimony is useless[,] if it's even admissible. As far as Dr. Wettstein, he also used the statement and again, because they helped [Appellant], okay, they were not a negative effect. Dr. Wettstein also used [the statements] and he was[] to be used [as a witness] in the penalty phase, the death penalty phase. And same thing, it was a mitigating circumstance and for the heavy drug usage, [*et cetera*.] So[,] for the same idea these were [Appellant's] voice, okay, in his own defense, particularly in the death penalty phase both through experts and without him necessarily having to testify himself.

*Id.* at 10-12. Trial counsel was asked, "if you had moved for suppression and were successful, couldn't you then have called [Appellant] to the stand to testify to those mitigating circumstances or drug and alcohol use at trial?" In response, trial counsel explained that calling Appellant to testify was not an option because it would "have opened [Appellant] up to cross-examination then in front of the judge or jury." *Id.* at 14.

On cross-examination, trial counsel stated that, in her opinion, knowing that Appellant had illegal substances in his system at the time he made the statements to the police did not cause her to "call into question the validity" of his waiving his *Miranda* rights because, as a defense expert explained, Appellant had a high tolerance level for drug use, and his use of crack cocaine would have "sharpened" or heightened his senses. *Id.* at 40-41. Based upon the expert's opinion as to the effects illegal substances may have had on Appellant at the time he made the statements, trial counsel found it difficult to argue that the waiver of the *Miranda* rights was invalid. *Id.* at 41.

Appellant recalled discussions with trial counsel about the possibility of filing a motion to suppress his statements to the police. Appellant confirmed that trial counsel explained, as summarized *supra*, that seeking to suppress the statements was not a good idea. *Id.* at 68. When asked if he discussed the possibility of filing a motion to suppress the statement with trial counsel, Appellant responded, "I had mentioned [to trial counsel] that I would possibly like to take that avenue, as far as suppression of [the] statement[s.]" *Id.* at 67-68.

Upon review, we concur with the PCRA court that trial counsel had an objectively reasonable and strategic basis for not pursuing a motion to suppress the statements Appellant made to the police shortly after the incident. As trial counsel explained, based upon the defense expert's assessment and report, she believed that a motion to suppress the statements on the ground Appellant did not knowingly, voluntarily, and intelligently waive his ***Miranda*** rights would not have been successful. Moreover, trial counsel articulated that the statements served a strategic purpose in both the guilt phase, as well as the death penalty phase, of the case. Trial counsel further explained that use of the statements supported the diminished capacity defense during the guilt phase of the trial and demonstrated, *inter alia*, remorse, a mitigating circumstance, during the penalty phase.

Furthermore, although Appellant now states that he wanted trial counsel to pursue suppression of the statements given to the police, Appellant admits that, during the pre-trial phase of the case, he was informed of the use of the

statements in support of the diminished capacity defense. *Id.* at 62-63. During the pre-trial phase of the case, Appellant sought to remove trial counsel on the grounds of irreconcilable differences surrounding plea negotiations and alleged statements trial counsel made to Appellant regarding his refusal to accept the Commonwealth's plea offer. *Id.* at 63-67. Appellant testified that trial counsel's miscommunication of the sentence length included within a plea offer, along with statements trial counsel made about Appellant's disinclination to accept a plea deal, "built more of a sense of mistrust" in trial counsel. *Id.* at 67. When asked if there were "any other issues in [trial counsel's] representation that[] caused conflict, caused a [loss] of trust, between you and [trial counsel,]" Appellant responded in the negative. Appellant did not raise trial counsel's failure to pursue suppression of the statements Appellant made to the police as a reason to seek removal of trial counsel, despite Appellant's claim that he "would possibly like" trial counsel to pursue such a motion.

We concur with the PCRA court, and the record supports, that trial counsel had an objectively reasonable basis for not pursuing a motion to suppress Appellant's statements. As such, Appellant failed to plead and prove a claim for ineffective assistance of counsel. *Pierce*, 527 A.2d at 975. Consequently, we affirm the PCRA court's denial of Appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/10/2023